IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LAUREN BARKER,<br><br>                    Plaintiff,<br><br><br>                    vs.<br><br><br>MANTI TELEPHONE COMPANY, PAUL COX, LAURA DAHL, KIRK DAHL<br><br>                    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:06-CV-00812-TC-SA |

Plaintiff Lauren Barker filed this action seeking damages, injunctive relief, and attorney's fees for Kirk Dahl's part in disseminating information regarding her personal telephone bill. She alleges that his actions constituted a tortious invasion of privacy. Mr. Dahl moved for summary judgment, arguing that Ms. Barker cannot demonstrate that he committed any of the four torts that comprise an invasion of privacy under Utah law. Ms. Barker opposed the motion, maintaining that Mr. Dahl intruded upon her seclusion and publicly disclosed embarrassing personal facts about her, both of which are invasions of privacy.

The undisputed material facts demonstrate that Mr. Dahl's actions do not constitute a tortious invasion of privacy. Accordingly, the court GRANTS Mr. Dahl's motion to dismiss.

## BACKGROUND

Mr. Dahl and Ms. Barker were coworkers at the Utah Department of Corrections's Central Utah Correctional Facility in Gunnison, Utah. Mr. Dahl's spouse, Laura Dahl, was an

employee of Manti Telephone Company, which was Ms. Barker's telecommunications provider. Through her employment, Ms. Dahl learned that Ms. Barker's private home phone bill was $1500. She also discovered that the charges stemmed from phone calls made to Tonga.

Ms. Dahl told Mr. Dahl about the charges to Ms. Barker's account. Two to four days later, Mr. Dahl approached Ms. Barker. He mentioned the phone bill and asked her who she was calling in Tonga. Specifically, he asked if she was calling a former inmate at the correctional facility who had been paroled to Tonga. Ms. Barker told him the calls were to a friend named "Eric" who was in Tonga. She also told him that her phone bill was none of his business. The parties dispute the Dahls' motives in this encounter. The Dahls claim they were concerned about Ms. Barker and wanted to give her a warning about the bill. Ms. Barker, noting that she paid her phone bill two days before Mr. Dahl talked to her, contends that the Dahls had no legitimate reason for pursuing the matter.

Mr. Dahl did not keep this information about Ms. Barker to himself. He spoke with Angela Allen, a mutual friend of Mr. Dahl and Ms. Barker, and told her about Ms. Barker's bill and her explanation of the phone calls. In the spring of 2006, Mr. Dahl talked with McKray Johnson and Heidi Johnson, both employed by the Department of Corrections. Again, he told them about Ms. Barker's phone bill and her story about "Eric."

In April of 2006, Ms. Johnson provided the Department of Corrections with information about Ms. Barker, including observations of her fraternizing with a parolee and the 2005 phone calls to Tonga. As a result, Ms. Barker was investigated by the Department. Mr. Dahl was questioned as part of the investigation and he told investigators about the phone bill and Ms. Barker's explanation. Ultimately, Ms. Barker admitted to fraternizing with parolees, including the parolee released to Tonga. She resigned from the Department of Corrections.

Ms. Barker initiated this suit in September of 2006, against defendants Manti Telephone Company, Paul Cox, Ms. Dahl, and Mr. Dahl. The claims against all defendants, other than Mr. Dahl, were dismissed at the request of the parties on December 18, 2008. (Doc. Num. 88) The termination of those defendants resulted in the dismissal of all federal statutory claims, leaving only the invasion of privacy claim against Mr. Dahl.

### JURISDICTION

First, the court must consider whether it retains jurisdiction over this case. The termination of the federal statutory claims leaves only a state law tort claim between two Utah residents. A federal court may exercise supplemental jurisdiction over state law claims that are part of the "same case or controversy" as claims over which the court has original jurisdiction. 28 U.S.C. § 1367(a). If the court dismisses the federal claims, leaving only the state claims, the "'district court has discretion to try state claims in the absence of any triable federal claims.'" Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995) (quoting Thatcher Enter. v. Cache County Corp., 902 F.2d 1472 (10th Cir.1990)). "'[T]hat discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.'" Id. (quoting Thatcher Enter., 902 F.2d at 1472). Thus, "[a] federal court justifiably may retain jurisdiction of the pendent claims when substantial time and energy have been expended on the case prior to the disposition of the federal claims." Id. (quoting Jones v. Intermountain Power Project, 794 F.2d 546, 550 (10th Cir.1986)). Where, however, the state law is in flux, "it is particularly appropriate for the federal courts to leave the continuing development and application of that cause of action to the state courts." Ball v. Renner, 54 F.3d 664, 669 (10th Cir.1995).

In this case, the litigation has been proceeding for over two years. The parties have

completed discovery.  This motion to dismiss was fully briefed before the dismissal of the federal

claims.  Furthermore, as explained below, Utah law is well developed in this area.  Given the late

stage of this litigation at the time the federal claims were dismissed and the clarity of Utah law

with respect to these claims, the court will exercise its discretion to retain jurisdiction of the

claim against Mr. Dahl.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In conducting its

analysis, the court must view all of the facts in the light most favorable to the non-movant and

make all reasonable inferences in favor of the non-moving party.  Piercy v. Maketa, 480 F.3d

1192, 1197 (10th Cir. 2007).  Summary judgment should be granted "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).

## ANALYSIS

The dispositive question in this case is whether the evidence can support a claim that Mr.

Dahl violated Ms. Barker's right to privacy.  In Utah, invasion of privacy is comprised of four

distinct torts:  (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) public

disclosure of embarrassing private facts, and (4) publicity which places an individual in a false

light in the public eye.  Stien v. Marriott Ownership Resorts, Inc., 944 P.2d 374, 377-78 (Utah

Ct. App. 1997).  Ms. Barker alleges intrusion upon seclusion and disclosure of private facts.

-4-

1. **Intrusion upon seclusion**

"[I]n order to establish a claim of intrusion upon seclusion, the plaintiff must prove two elements by a preponderance of the evidence: (1) that there was 'an intentional substantial intrusion upon the solitude or seclusion of the complaining party,' and (2) the intrusion 'would be highly offensive to the reasonable person.'" Stien, 944 P.2d at 378 (quoting Turner v. General Adjustment Bureau, Inc., 832 P.2d 62, 67 (Utah Ct. App. 1992)).  Utah law follows the Restatement for this cause of action.  Id.

A.  Substantial Intrusion

Mr. Dahl argues this claim fails because he was a passive recipient of the information and did not pry into Ms. Barker's private affairs.  Ms. Barker argues that Mr. Dahl committed an intrusion by "interjecting himself into the Plaintiff's private affairs."  (Pl.'s Mem. Opp. Summ. J. 8)  She claims the court should infer Mr. Dahl directed Ms. Dahl to obtain Ms. Barker's billing records and that this constituted a substantial intrusion.  She further claims that it was Mr. Dahl's use of the information that constitutes "the crux of the tort."  (Id. at 9)

First, there is no evidence that Mr. Dahl was involved in procuring the billing information.  Ms. Barker does not point to any such evidence, but argues the court should infer his involvement.  As Mr. Dahl points out, however, the only evidence in the record as to Ms. Dahl's motivations in looking at the bill is her deposition testimony.  She testified that her coworkers brought the bill to her attention.  (Dep. of Laura Dahl 4-5, Aug. 6, 2007) As a result, Ms. Barker would not be able to show by a preponderance of the evidence that Mr. Dahl actively sought the billing records.  In the absence of any contravening evidence, Ms. Barker's assertion does not create a material fact for trial.

In addition, Mr. Dahl's role in relaying information about the bill does not constitute a substantial intrusion.  As explained in the Restatement of Torts (Second), the tort of intrusion upon seclusion "does not depend upon any publicity given to the person whose interest is invaded or to his affairs.  It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns."  Restatement (Second) Torts § 652B cmt. a (1977).  In addition, the Restatement further explains,

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home.  It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiffs private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires.  It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.  <u>The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.</u>

Restatement (Second) of Torts § 652B cmt. b (1977) (emphasis added).  As this comment clarifies, the tort is concerned with an actual intrusion into a space that the plaintiff wishes to remain private.  As the Utah courts explained, although a physical intrusion may not always be necessary, "there must be something in the nature of prying or intrusion."  <u>Stien</u>, 944 P.2d at 378 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 117, at 854-55 (5th ed.1984)).  Thus, it is that affirmative physical intrusion, eavesdropping, investigation, examination or prying that constitutes the tort, not any subsequent sharing of the information learned in an intrusion.

Accordingly, the dissemination of what is learned in an intrusion by a passive recipient of

the information is not itself an intrusion upon seclusion.  For example, the Pennsylvania courts

considered a claim of intrusion upon seclusion where the defendant, a newspaper, had published

a column allegedly containing private facts about the plaintiffs.  <u>Harris v. Easton Publishing Co.</u>,

483 A.2d 1377, 1381 (Pa. Super. Ct. 1984).  The newspaper had received the facts, unsolicitated,

from the state's Department of Welfare.  <u>Id.</u> at 1384.  The court upheld a grant of summary

judgment to the newspaper because "[t]he facts alleged to constitute the invasion of privacy in

the instant case were not obtained by the Company by means of any intentional intrusion."  <u>Id.</u>

  Here, Mr. Dahl's only action was to pass on the information he passively received.  His

actions, therefore, did not constitute an intrusion upon seclusion and he is entitled to summary

judgment on that claim.

  B.  <u>Highly Offensive to a Reasonable Person</u>

  Furthermore, even if Mr. Dahl had somehow committed an intrusion, that intrusion could

not be considered highly offensive to a reasonable person.  <u>See</u> <u>Stien</u>, 944 P.2d at 379.  Although

this issue is usually reserved for the jury, "the trial court must make a threshold determination of

offensiveness in discerning the existence of a cause of action for intrusion."  <u>Id.</u> (quotation

omitted).  "In making its threshold determination of offensiveness, a court should consider such

factors as the degree of intrusion, the context, conduct and circumstances surrounding the

intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and

the expectations of those whose privacy is invaded."  <u>Id.</u> (quotation omitted).

  A reasonable person could not consider Mr. Dahl's actions highly offensive.  He told

three other people that Ms. Barker had a large phone bill to Tonga.  While Ms. Barker might

object to the dissemination of this information, a reasonable person could not find it highly

offensive.

### 2. Public disclosure of private facts

Ms. Barker further alleges that Mr. Dahl committed a tort by publicly disclosing embarrassing private facts about her.  To prevail on a claim relating to public disclosure of embarrassing facts, a plaintiff must establish the following elements:

(1) the disclosure of the private facts must be a public disclosure and not a private one;

(2) the facts disclosed to the public must be private facts, and not public ones;

(3) the matter made public must be one that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.

Shattuck-Owen v. Snowbird Corp., 16 P.3d 555, 558 (Utah 2000).  Ms. Barker's claim fails because she cannot show a public disclosure occurred or that the matter was highly offensive.

### A. Public Disclosure

A "[p]ublic disclosure 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" Shattuck-Owen, 16 P.3d at 558 (quoting Restatement (Second) of Torts § 652D cmt. a (1977)).  The extent of the communication is critical; "communicating a private fact 'to a small group of persons,' for example, does not constitute public disclosure."  Shattuck-Owen, 16 P.3d at 558-59 (quoting Restatement (Second) of Torts § 652D cmt. a (1977)).  The size of the audience, however, is not dispositive in and of itself. "Rather, the facts and circumstances of a particular case must be taken into consideration in determining whether the disclosure was sufficiently public so as to support a claim for invasion of privacy."  Id. at 559 (quotation omitted).

Mr. Dahl spoke to three people about Ms. Barker's phone bill.[1]  This qualifies as a disclosure to a small group, not sufficient to create a public disclosure.  Furthermore, there are no distinguishing facts present in this case that might transform a disclosure to a small number of individuals into a public disclosure.  See id. at 559.  As a result, Mr. Dahl's communications constituted only a private disclosure and were not an invasion of privacy.

B.  Highly Offensive and Objectionable

Neither was the communication highly offensive and objectionable.  Mr. Dahl disclosed that Ms. Barker had a $1500 phone bill to Tonga.  This type of disclosure cannot be considered "highly offensive and objectionable to a reasonable person of ordinary sensibilities." Shattuck-Owen, 16 P.3d at 558.  Ms. Barker's claim also fails on this ground.

**CONCLUSION**

The undisputed material facts demonstrate that Ms. Barker's invasion of privacy claims fail as a matter of law.  Accordingly, the defendant's motion for summary judgment is GRANTED.


SO ORDERED this 6th day of January, 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge

---

[1]This does not include the investigators.  Ms. Barker does not challenge the disclosures made during the course of the investigation.